**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ALBERT SPANN, | ) | CASE NO. 1:18-cv-02700 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID HANNAH, *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |
| | ) | |

This matter is before the Court upon the cross-Motions for Summary Judgment filed by

Defendants Stephanie Adams, Janice Douglas, Nurse Chris, Unknown Doctor, and Unknown

Nurse(s) (Defendants) (R. 29), and *pro se* Plaintiff Albert Spann (R. 30). For the following

reasons, Defendants' Motion is GRANTED, and Plaintiff's Motion is DENIED.

## I. Procedure

Plaintiff Albert Spann—an Ohio prisoner in the custody of the Ohio Department of

Rehabilitation and Corrections (ODRC)—filed a civil Complaint *in forma pauperis* alleging

claims of deliberate indifference and violation of the Eighth Amendment's prohibition on cruel

and unusual punishment, pursuant to 42 U.S.C. § 1983, against Defendants, as well as David

Hannah, Nurse Mitchell, and Nurse Snowden, all in their individual and official capacities. (R. 1,

PageID# 1–2, 6 ¶¶ 1, 3, 29–32). Plaintiff seeks both monetary and injunctive relief. (*Id.*, PageID# 6–7).

The previously assigned District Court Judge *sua sponte* dismissed Plaintiff's Complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief can be granted. (R. 5, PageID# 70–71). On appeal, the Sixth Circuit partially vacated the Court's decision, reviving Plaintiff's claims against the following defendants: Douglas, Chris, Adams, Doctor Unknown, and Nurse(s) Unknown, in both their individual and official capacities, because at the pleading stage, the Complaint plausibly alleged that these Defendants were deliberately indifferent to Plaintiff's medical needs. *Spann v. Hannah*, 2020 WL 8020457, at *2– 3 (6th Cir. Sept. 10, 2020). At the same time, the Sixth Circuit affirmed the District Court's dismissal of Plaintiff's claims with respect to then-defendants Hannah, Mitchell, and Snowden. *Id.* The Sixth Circuit remanded the case for further proceedings. *Id.* at *4.[1]

Following the close of discovery, Defendants filed a Motion for Summary Judgment (R. 29). Plaintiff filed a combined Opposition to Defendants' Motion and a cross-Motion for Summary Judgment (R. 30), to which Defendants filed a Reply (R. 31). The Motions have been fully briefed and are ripe for the Court's review.

## II. Facts

Plaintiff, an Ohio prisoner with glaucoma, is in the custody of the ODRC and confined at Grafton Correctional Institution (GCI). (R. 1, PageID# 1 ¶¶ 3, 5). Defendants Adams and Douglas were employed as a GCI nurse and institutional physician, respectively, for all or some

---

[1] On remand, the parties consented, pursuant to 28 U.S.C. § 636(c), to the assignment of the case to the undersigned, who at the time was a Magistrate Judge. (R. 24, PageID# 150). The case was again reassigned to the undersigned on February 17, 2022, as a District Court Judge.

2

of the time between 2017 and 2018. (*Id.*, PageID# 1–2; R. 29, PageID# 165). Defendants Chris, Unknown Doctor, and Unknown Nurse(s) were employed at Franklin Medical Center (FMC) in Columbus, Ohio, for all or some of the same time period. (R. 1, PageID# 1–2; R. 29, PageID# 165).

Plaintiff's claims allege deliberate indifference by the medical staffs at GCI and FMC, in connection with their treatment of Plaintiff's glaucoma. Specifically, Plaintiff alleges that between 2017 and 2018, personnel on the medical staffs at GCI and FMC administered certain eye medications to which staff members knew he was allergic, causing him to experience severe reactions, including pain, swelling, and the potential to "cause him permanent blindness." (R. 1, PageID# 2–6 ¶¶ 5–28). For instance, Plaintiff alleges that in November 2017, Defendant Douglas prescribed him eyedrops of Dorzolamide to treat his glaucoma, and he subsequently had an allergic reaction resulting in that drug being "discontinued." (*Id.*, PageID# 3 ¶¶ 6, 9). Nonetheless, Plaintiff alleges, the staff at GCI administered him Dorzolamide again in January 2018, which caused him to experience a severe allergic reaction. (*Id.*).

According to Plaintiff's Complaint, each defendant had a role in mistreating his glaucoma and violating his constitutional rights. In addition to Defendant Douglas allegedly prescribing Plaintiff Dorzolamide, she also "changed" his medications to Xalatan and Alphagan in April 2018. (*Id.* ¶ 11). Plaintiff further alleges that another drug that Defendant Douglas had prescribed him—Timolol—caused him allergic reactions, but that despite explaining this to Defendant Douglas, she advised Plaintiff to continue taking the Timolol. (*Id.*, PageID# 4 ¶ 16). Plaintiff also contends that on August 23, 2018, Defendant Adams prescribed him Timolol despite knowing that Plaintiff had allergic reactions to that drug. (*Id.* ¶ 18). Separately, Plaintiff alleges that in August 2018, while he was being treated at FMC, Defendants Chris, Unknown

3

Doctor, and Unknown Nurse(s) repeatedly administered Plaintiff Atropine, despite Plaintiff's warning that he was severely allergic to this drug as well. (*Id.* ¶ 14). And in another instance at FMC, Defendant Unknown Nurse "put the wrong medications in Plaintiff's eyes," leading to another severe allergic reaction. (*Id.*, PageID# 5 ¶ 23). In addition to the preceding allegations levied against individual Defendants, Plaintiff's Complaint contains several accusations directed generally toward the medical staffs at GCI and FMC for allegedly "knowingly" administering him drugs to which he was allergic. (*See, e.g.*, *id.* ¶ 22).

### III. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Quinn v. Eshem*, 2016 WL 9709498, at *2 (6th Cir. Dec. 20, 2016) ("Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (internal quotation marks omitted)). There is a genuine dispute as to a material fact when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Non-moving parties may not rest upon the mere allegations in their pleadings nor upon general allegations that issues of fact may exist. *See Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974). Moreover, a party asserting an affirmative defense bears the burden of proof at trial as to the affirmative defense, and thus bears that burden at the summary judgment stage as well. *See, e.g.*, *Wells Fargo Bank, N.A. v. Favino*, 2011 WL 1256847, at *4 (N.D. Ohio Mar. 31, 2011) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). In

4

ruling on a motion for summary judgment, the Court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990).

The standards upon which the Court evaluates motions for summary judgment do not change when, as here, "both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (alteration in original) (*quoting Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). The Court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (*quoting Taft*, 929 F.3d at 248).

### IV. Analysis

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). As the Supreme Court held in *Porter v. Nussle*, the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." 534 U.S. 516, 532 (2002). The purpose of the PLRA's exhaustion requirement is to "allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create

an administrative record for those disputes that eventually end up in court." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6ᵗʰ Cir. 2010) (*quoting Woodford*, 548 U.S. at 94–95).

Since the instant action alleges deliberate indifference and a violation of Plaintiff's Eighth Amendment rights pursuant to § 1983 in connection with Defendants' medical treatment of Plaintiff during his incarceration, the Court must dismiss the suit if Plaintiff has not properly exhausted his administrative remedies.[2] To make that determination, the Court looks to Ohio state law for the procedures that inmates must satisfy to properly exhaust their administrative remedies. *Marshall v. Ohio Dep't of Rehab. and Corr.*, 2018 WL 2539418, *2 (6ᵗʰ Cir. May 23, 2018).

Ohio Administrative Code (OAC) § 5120-9-31 provides a three-step grievance procedure for inmates, which is designed to address their complaints related to institutional life. OAC § 5120-9-31(A), (J). First, the inmate must file an "informal complaint." *Id.* § 5120-9-31(J)(1). Informal complaints "must contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved and the name or names of any witnesses." *Id.* § 5120-9-31(J). If the inmate does not know the identity of the personnel involved in the incident being reported, the inmate may file a "John/Jane Doe" complaint; but when filing such a complaint, it must "be specific as to dates, times, places,

---

[2] Plaintiff appears to argue that the Court has already ruled in his favor on the issue of exhaustion elsewhere on the docket, meaning that the Court's review of that issue here would be improper for reasons of preclusion and the law of the case doctrine. (R. 30, PageID# 586–587). Specifically, Plaintiff contends that this issue has been decided by the Court during its "§ 1915 review" of the case. (*Id.*). To the extent that this is a reference to the Court's mandatory screen of proceedings *in forma pauperis* for the dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e), Plaintiff is mistaken that the case's mere passage through that mandatory screen indicates a ruling in his favor on the issue of exhaustion. This Court, and the Sixth Circuit for that matter, have not ruled on this issue of PLRA exhaustion, and the Court will consider it here. *See Spann*, 2020 WL 8020457.

physical descriptions of any unidentified personnel and the actions of said personnel giving rise to the complaint." *Id.* If an inmate is dissatisfied with the response to the informal complaint, the second step is for the inmate to file a notification of grievance with the inspector of institutional services. *Id.* § 5120-9-31(J)(2). If the issue has still not been resolved at that point, the inmate may then move to the third step and file an appeal with the office of the chief inspector. *Id.* § 5120-9-31(J)(3). After the completion of all these steps, the inmate would then have exhausted his or her administrative remedies.

When analyzing whether Plaintiff exhausted his administrative remedies, the Court keeps in mind that a failure to exhaust is an affirmative defense, meaning that Plaintiff need not demonstrate exhaustion in his Complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, Defendants have the burden to plead and prove Plaintiff's failure to exhaust. *See Board v. Smith*, 2020 U.S. Dist. LEXIS 140759, at *5 (W.D. Mich. July 2, 2020) (*citing Jones*, 549 U.S. at 212–16), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 139480 (W.D. Mich. Aug. 5, 2020). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (*quoting* W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)) (emphases omitted). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (*quoting* 11 James William Moore et al., *Moore's Federal Practice* § 56.13[1], at 56–138 (3d ed. 2000)).

Plaintiff has made several grievance-related filings that have progressed to various levels in the three-step process outlined above. (*See* R. 29-1, PageID# 186–204; R. 1-4, PageID# 28; R. 1-5, PageID# 29–30; R. 1-6, PageID# 31–32; R. 1-7, PageID# 33–34). However, for the following reasons, Plaintiff failed to exhaust his administrative remedies for grievance claims against any of the Defendants. The Court considers each defendant in turn.

A. <u>Defendants Adams and Nurse Chris</u>

Defendants Adams and Nurse Chris were never mentioned, by name or otherwise, in any of Plaintiff's grievance-related filings. Although "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances, a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (internal citation omitted) (internal quotation marks omitted) (*quoting Jones*, 549 U.S. at 219; *Sullivan v. Kasajuru*, 316 F. App'x 469, 470 (6th Cir. 2009)).

In *Hall*, the Sixth Circuit considered Michigan state grievance procedures in the context of an exhaustion analysis. *Id.* The Michigan procedures required that inmates include in their grievances "dates, times, places, and names of all those involved in the issue being aggrieved." *Id.* (*citing* Mich. Dep't Corr. Pol'y Directive 03.02.130) (emphasis omitted). In that case, the Sixth Circuit affirmed the district court's dismissal of a defendant on exhaustion grounds because the plaintiff failed to provide the defendant's name in his grievance. *Id.*; *see also King v. Banks*, 2012 WL 1068103, at *3–4 (S.D. Ohio Mar. 29, 2012) (holding that the plaintiff failed to exhaust his administrative remedies under Ohio law as to two particular defendants where those defendants were not named in his grievance, and that general references to the prison "administration" were insufficient to name the specific defendants), *report and recommendation*

*adopted*, 2012 WL 2891264, at \*1 (S.D. Ohio July 13, 2012) ("Ordinarily, a claim against a particular corrections official is not properly exhausted if that official is not named in the grievance."); *Leonard v. Mohr*, 2012 WL 423771, at \*5 (S.D. Ohio Feb. 9, 2012) (recommending that summary judgment be granted to the defendants that were not named in the plaintiff's grievances), *report and recommendation adopted*, 2012 WL 936410, at \*4 (S.D. Ohio Mar. 20, 2012); *see also Goodrich v. Houghlan*, 2019 WL 1362524, \*4 (N.D. Ohio Mar. 26, 2019) (gathering cases).

Here, Ohio procedure required that Plaintiff's informal complaints provide "the name or names of personnel involved," but he failed to include any specific reference to Defendants Adams or Nurse Chris. As a result, Plaintiff has failed to exhaust his administrative remedies as to his claims against these two Defendants.

### B. Defendant Douglas

In contrast to the previous two Defendants, Plaintiff did specifically refer to Defendant Douglas by name in two of his grievance-related filings. (*See* R. 1-5, PageID# 29–30; R. 1-6, PageID# 31–32; R. 29-1, PageID# 202–203; R. 29-1, PageID# 196–198). However, in neither case did Plaintiff complain about Defendant Douglas's conduct.

First, in an informal complaint dated January 9, 2018, Plaintiff recounted an appointment he had with Defendant Douglas, where he explained to her that he was unable to put medication in his eyes due to his poor vision. (R. 1-5, PageID# 29; R. 29-1, PageID# 202). Their appointment was then interrupted by Nurse Snowden, who Plaintiff said was "very aggressive and rude" to him—and that was the reason for Plaintiff filing the informal complaint, which did not question any action by Defendant Douglas. (R. 1-5, PageID# 29; R. 29-1, PageID# 202).

Similarly, in another informal complaint dated March 16, 2018, Plaintiff began by

explaining that on January 9, 2018, he saw Defendant Douglas, who had taken Plaintiff off Dorzolamide because the drops were causing his eyes to be infected. (R. 1-6, PageID# 31–32; R. 29-1, PageID# 196–198). Plaintiff next explained that when he was called to "medical" in March 2018 to pick up his medication, he was given the medication that Defendant Douglas had stopped prescribing in January 2018. (R. 1-6, PageID# 31; R. 29-1, PageID# 196). Plaintiff complained that he was being "improperly supervised" and that he just wanted "proper medical care." (R. 1-6, PageID# 31; R. 29-1, PageID# 196). In other words, in this grievance-related filing, Plaintiff once again did not complain about Dr. Douglas's conduct, who according to Plaintiff had taken him off a medication that irritated his eyes, while unidentified personnel in "medical" allegedly gave him the wrong medication two months later.

The foregoing two grievances did not put Defendant Douglas or GCI on notice about the allegations that Plaintiff would later make in his Complaint—namely, that Defendant Douglas advised Plaintiff to continue taking Timolol even though she knew that he was allergic. (*Id.*, PageID# 4 ¶ 16). Therefore, Plaintiff has also failed to exhaust his administrative remedies as to his claims against Defendant Douglas.

### C. Defendants Unknown Doctor and Unknown Nurse(s)

According to the Complaint, Defendants Unknown Doctor and Unknown Nurse(s) were employed at FMC. (R. 1, PageID# 1–2). The only one of Plaintiff's informal complaints that can be construed as alleging misconduct against personnel at FMC is dated August 20, 2018. (R. 1-7, PageID# 33–34; R. 29-1, PageID# 192). In that complaint, Plaintiff alleged that following eye surgery in May 2018, he had severe pain and swelling, and was ultimately transferred to FMC. (R. 1-7, PageID# 33; R. 29-1, PageID# 192). Plaintiff accused "ODRC medical personnel" at FMC of demonstrating deliberate indifference to his medical condition by "knowingly"

providing him with the wrong medications. (R. 1-7, PageID# 33; R. 29-1, PageID# 192).

Plaintiff said that he did not know the names of the "ODRC medical personnel" in question—

and that they would be "determined following discovery"—because he was refused their names

upon request. (R. 1-7, PageID# 33; R. 29-1, PageID# 192).

To the extent that Plaintiff would have the Court construe this grievance as a "John/Jane

Doe" complaint, it would still be insufficient to satisfy his exhaustion requirements as to

Defendants Unknown Doctor and Unknown Nurse(s) because in such a complaint, Plaintiff

would still be required to provide specific details, including "physical descriptions of any

unidentified personnel and the actions of said personnel giving rise to the complaint," which he

did not do. OAC § 5120-9-31(J). General references to "ODRC medical personnel" are

insufficient to put any particular individual on notice of the conduct about which Plaintiff

complained. *See Triplett v. Sheldon*, 2018 WL 3105064, at *3 (N.D. Ohio June 25, 2018)

(holding that where a plaintiff did not mention individual defendants in his grievance related

filings, and did not avail himself of the opportunity to file a "John Doe" or "Jane Doe"

grievance, that plaintiff had failed to exhaust his claims as to the defendants). As a result,

Plaintiff has also failed to exhaust his administrative remedies as to his claims against

Defendants Unknown Doctor and Unknown Nurse(s).[3]

There is no material dispute that Plaintiff failed to exhaust his administrative remedies

---

[3] Plaintiff argues that the Court should not hold it against Plaintiff that he was unable to identify
certain ODRC employees in his grievance-related filings because "ODRC employees routinely
hide their identifies under the guise of 'security' thus creating obstacles for pro se and often
illiterate prisoners to properly render allegations within the truncated grievance process." (R. 30,
PageID# 586). But Plaintiff's argument elides over the fact that he had the ability to file a
"John/Jane Doe" complaint in order to exhaust his claims. Plaintiff could have, but did not, avail
himself of this procedure by, *inter alia*, providing a physical description of the personnel he was
unable to identify. Therefore, Plaintiff's argument is not well taken.

under the PLRA against all remaining Defendants in this action. The Defendants, having carried

their burden to demonstrate that Plaintiff failed to exhaust his available administrative remedies,

are entitled to summary judgment.[4]

### V. Conclusion

Defendants' Motion for Summary Judgment (R. 29) is GRANTED, and Plaintiff's

Motion for Summary Judgment (R. 30) is DENIED. As a result, this action is DISMISSED with

prejudice. Further, the Court certifies that an appeal from this decision could not be taken in

good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C.

§ 1915(a)(3).

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States District Judge

Date: September 18, 2023

---

[4] Plaintiff raises another contention—that the technology employed by GCI to log prisoner
grievances essentially makes the grievance procedure unavailable to inmates. (R. 30, PageID#
587). For instance, Plaintiff contends that the machines that inmates must use to type their
grievances only allows them access for twelve-minute increments, and that the typing system
renders the process unavailable to those inmates suffering from blindness. (*Id.*). Even assuming
all of this to be true, Plaintiff does not contend that he was unable to access the grievance
system—in fact, such a contention would be belied by the number of grievances Plaintiff
actually filed with GCI. (*See* R. 29-1, PageID# 186–204). Therefore, Plaintiff's contention is
unavailing.